Christopher A. Seeger (*pro hac vice* forthcoming)
SEEGER WEISS LLP
55 Challenger Road, Suite 600
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Facsimile: (973) 639-9393
Email: cseeger@seegerweiss.com

Shauna Itri (SBN 345536)
Alana K. Bevan (*pro hac vice* forthcoming)
SEEGER WEISS LLP
325 Chestnut St., Suite 917
Philadelphia, PA 19106
Telephone: (215) 564-2300
Facsimile: (215) 851-8029
Email: sitri@seegerweiss.com

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.R. and B.R., by and through their parent and guardian Stephanie Moreno, individually and on behalf of all others similarly situated,<br><br>    *Plaintiffs,*<br><br>v.<br><br>PowerSchool Holdings, Inc.; PowerSchool Group LLC; and Bain Capital, L.P.,<br><br>    *Defendants.* | Case No. **'25CV0932 BEN MSB**<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs J.R. and B.R., by and through their parent and guardian Stephanie Moreno, individually and on behalf of all others similarly situated, bring this class action against PowerSchool Holdings, Inc., PowerSchool Group LLC, and Bain Capital, L.P. (collectively,

1

CLASS ACTION COMPLAINT

"PowerSchool" or "Defendants"), and based on personal knowledge, information and belief, and the investigation of counsel, allege as follows:

**INTRODUCTION**

1.      PowerSchool is a leading provider of cloud-based education software. Most of PowerSchool's 18,000 customers are K-12 educators who support over 60 million students worldwide.[1] PowerSchool's extensive range of software solutions is designed to help teachers, administrators, and school board officials manage students and staff, and communicate with minor students and parents about topics as varied as attendance, behavior problems, grades, individualized education plans, and college preparation. In offering those solutions to school systems across the United States, PowerSchool collects and stores vast amounts of sensitive personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information") belonging to millions of minor students, parents, and employees affiliated with PowerSchool's customers (collectively, "Class members").

2.      PowerSchool affirmatively promises to safeguard the Private Information it collects and stores.[2] In providing PowerSchool with sensitive Private Information, Plaintiffs and Class members relied on that promise. Further, under the common law, numerous federal and state laws, and its contracts with customers, PowerSchool owed Plaintiffs and Class members a non-delegable duty to implement adequate cybersecurity systems necessary to keep their Private Information confidential, secure, and protected from unauthorized disclosure or access.

---

[1] *See* Press Release, *Bain Capital Completes Acquisition of PowerSchool* (Oct. 1, 2024), POWERSCHOOL, https://www.powerschool.com/bain-capital/ (last visited Apr. 11, 2025).

[2] *See Global Privacy Statement*, POWERSCHOOL, https://www.powerschool.com/privacy/ (last visited Apr. 11, 2025).

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

3.      Instead, PowerSchool repeatedly and systematically failed to implement reasonable, industry-standard data security practices, maintaining the Private Information under its control in a negligent and/or reckless manner. In fact, unbeknownst to its customers or to millions of end users like Plaintiffs and Class members, PowerSchool failed to implement even the most basic online security protocols, including multi-factor authentication and adequate data encryption.[3]

4.      Between December 19 and December 28, 2024, cybercriminals deliberately accessed PowerSchool's vulnerable systems and intentionally exfiltrated valuable, private, and sensitive Private Information belonging to Plaintiffs and Class members (the "Data Breach" or the "Breach"). PowerSchool's data security measures failed again, as the company did not detect the infiltration of its systems—or the exfiltration of data belonging to Plaintiffs and Class members—becoming aware of the Data Breach only when the hackers responsible contacted PowerSchool to demand a ransom.[4]

5.      According to public reports, the cybercriminals responsible for the Data Breach claim to have stolen the Private Information of 62,488,628 students—most of whom are minors—and 9,506,624 teachers across North America.[5] The compromised Private Information includes dates of birth, addresses, phone numbers, email addresses, copies of photo

---

[3] *See* Kevin Collier, *Children's data hacked after school software firm missed basic security step, internal report says*, NBC NEWS (Jan. 31, 2025), https://www.nbcnews.com/tech/security/powerschool-hack-data-breach-protect-student-school-teacher-safe-rcna189029 (last visited Apr. 11, 2025).

[4] *See id.*

[5] *See* Lawrence Abrams, *PowerSchool hacker claims they stole data of 62 million students*, BLEEPINGCOMPUTER (Jan. 22, 2025), https://www.bleepingcomputer.com/news/security/powerschool-hacker-claims-they-stole-data-of-62-million-students/ (last visited Apr. 11, 2025).

3

CLASS ACTION COMPLAINT

identification, tax information numbers, Social Security numbers ("SSNs"), medical records, and disciplinary records.[6]

6.      The Data Breach was a direct and foreseeable result of PowerSchool's failure to implement adequate cybersecurity procedures and protocols.

7.      As a result of the Data Breach, Plaintiffs and Class members have suffered concrete injuries in fact including: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains inadequately secured and vulnerable to unauthorized access and abuse; and (b) remains in PowerSchool's possession and is subject to further unauthorized disclosures so long as PowerSchool fails to undertake appropriate and adequate measures to protect the Private Information.

8.      Plaintiffs initiate this class action lawsuit on behalf of all those similarly situated to address PowerSchool's inadequate safeguarding of Class members' Private Information, which PowerSchool collected and maintained.

9.      Further, Plaintiffs and Class members have a continuing interest in ensuring their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

---

[6] *See* Collier, *supra* note 3.

4

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

## PARTIES

**Plaintiffs J.R. and B.R.**

10. Plaintiff J.R. is a minor under the age of 18 residing with their parent and guardian, Stephanie Moreno. At all relevant times, J.R. has been domiciled in the state of California, and attends school in the San Diego Unified School District.

11. Plaintiff B.R. is a minor under the age of 18 residing with their parent and guardian, Stephanie Moreno. At all relevant times, B.R. has been domiciled in the state of California and attends school in the San Diego Unified School District.

12. Plaintiffs J.R. and B.R., along with Stephanie Moreno, are victims of the Data Breach.

13. Private Information belonging to Plaintiffs J.R., B.R., and Ms. Moreno was stored with PowerSchool because of their role as students and parent in the San Diego Unified School District.

14. As required to obtain services from PowerSchool, Plaintiffs J.R., B.R., and Ms. Moreno provided PowerSchool with highly sensitive Private Information. PowerSchool then possessed and controlled that information.

15. As a result, Private Information belonging to Plaintiffs J.R., B.R., and Ms. Moreno was among the data accessed by an unauthorized third party in the Data Breach.

16. At all times herein relevant, Plaintiffs J.R. and B.R. are and were a member of the Class.

17. Plaintiffs J.R., B.R., and Ms. Moreno received an email from PowerSchool stating that their Private Information was involved in the Data Breach.

5

CLASS ACTION COMPLAINT

18.    Plaintiffs J.R., B.R., and Ms. Moreno also received an electronic notification of the Data Breach when logging into their individual PowerSchool accounts.

19.    Plaintiffs J.R., B.R., and Ms. Moreno were unaware of the Data Breach before receiving these notifications.

20.    As a result, Plaintiffs J.R. and B.R. were injured in the form of lost time dealing with the consequences of the Data Breach, which included and continues to include: time spent verifying the legitimacy and impact of the Data Breach; time spent self-monitoring their accounts with heightened scrutiny; and time spent seeking legal counsel regarding their options for remedying and/or mitigating the effects of the Data Breach.

21.    Plaintiffs J.R. and B.R. were also injured by the material risk to future harm they suffer based on PowerSchool's breach; this risk is imminent and substantial because Plaintiffs' data has been exposed in the breach, the data involved—including SSNs and healthcare information—is highly sensitive and presents a high risk of identity theft or fraud; and it is likely, given PowerSchool's clientele, that some of the Class's information that has been exposed has already been misused.

22.    In fact, since the Data Breach, unknown individuals have on two separate occasions telephoned the schools attended by Plaintiffs J.R. and B.R., impersonating family members and seeking additional information about the children.

23.    Plaintiffs J.R. and B.R. also suffered actual injury in the form of damages to and diminution in the value of their Private Information—a condition of intangible property that they entrusted to PowerSchool, which was compromised in and as a result of the Data Breach.

24.    Plaintiffs J.R. and B.R., as a result of the Data Breach, have increased anxiety for their loss of privacy and anxiety over the impact of cybercriminals accessing, using, and

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

selling their Private Information. Plaintiffs J.R. and B.R. have told their parent and guardian Ms. Moreno that they feel violated and frightened knowing their Private Information has been stolen.

25.     Plaintiffs J.R. and B.R. have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their Private Information, in combination with their name, being placed in the hands of unauthorized third parties/criminals.

26.     Plaintiffs J.R. and B.R. have a continuing interest in ensuring that their Private Information, which, upon information and belief, remains backed up in PowerSchool's possession, is protected and safeguarded from future breaches.

**Defendants**

27.     Defendant PowerSchool Holdings, Inc., is a Delaware corporation with its principal place of business at 150 Parkshore Dr., Folsom, California 95630.

28.     Defendant PowerSchool Group LLC is a Delaware Limited Liability Company with its principal place of business at 150 Parkshore Dr., Folsom, California 95630.

29.     Defendant Bain Capital, L.P. is a Massachusetts-based limited partnership. Bain Capital, L.P. fully acquired PowerSchool on or around October 1, 2024, prior to the Data Breach in December 2024.[7]

**JURISDICTION AND VENUE**

30.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because this is a class action involving more than 100 class members, the aggregate

---

[7] *See* Press Release, *supra* note 1.

7

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one member of the class is a citizen of a state different from at least one PowerSchool.

31.     This Court has personal jurisdiction over PowerSchool because it conducts substantial business in this District, has purposefully availed itself of the benefits and privileges of conducting business in this District, and has caused harm to Plaintiffs and Class members as a direct result of actions they take in this District.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because PowerSchool is subject to personal jurisdiction in this District.

**COMMON FACTUAL ALLEGATIONS**

**PowerSchool Collected and Stored Private Data in the Course of Business**

33.     PowerSchool is a leading K-12 cloud-based software provider. Its products "support educators, administrators, and families to help students learn."[8]

34.     PowerSchool is so successful that it was purchased for $5.6 billion in October 2024 by PowerSchool Bain Capital, L.P.[9]

35.     In providing its cloud-based education software, PowerSchool collects, processes, stores, and uses for its own commercial benefit massive amounts of Private Information belonging to millions of current and former students, parents and guardians, teachers, and other employees of PowerSchool's school district customers.

---

[8] *All Products*, POWERSCHOOL, https://www.powerschool.com/solutions/products/ (last visited Apr. 11, 2025).

[9] *See* Press Release, *supra* note 1.

8

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

36.     As a condition of receiving educational and/or employment services from PowerSchool, Plaintiffs and Class members were obliged to entrust the company with their highly sensitive Private Information.

37.     Even when that Private Information was originally entrusted to the individual school district that educated the student or employed the teacher, that school district, in turn, entrusted Plaintiffs' and Class members Private Information to PowerSchool.

38.     This Private Information was highly sensitive and, upon information and belief, included some or all of the following for both current and past students and school district employees:

    a.   Student, parent/guardian, and employee names

    b.   Dates of birth

    c.   SSNs and tax identification numbers

    d.   Usernames and passwords

    e.   Mailing and email addresses

    f.   Phone numbers

    g.   Photo identification

    h.   Student records, including:

          i.   Assessment data

          ii.   Conduct or behavior data

          iii.   Individualized education and 504 plans

          iv.   Enrollment data

          v.   Student identifiers

          vi.   Grades

9

CLASS ACTION COMPLAINT

       vii.  Academic and extracurricular program membership

   i.  Medical records, including:

       i.  Documentation of physical and mental disabilities

       ii.  Medication information

       iii.  Immunization records

       iv.  Treatment providers

39.    This sort of Private Information is extremely sensitive. Indeed, the stolen data even included data regarding parental access to children, parental restraining orders, and instructions about school-administered medications.[10]

40.    Much of this Private Information relates to minor students, who have no agency in determining how their sensitive and potentially embarrassing information is protected.

41.    This Private Information is also highly valuable to criminals because it can be used to commit identity theft and medical theft crimes.

42.    Because of the highly sensitive and personal nature of the information about Plaintiffs and Class members that PowerSchool collects, processes, and stores, PowerSchool is obligated to, among other things: keep Private Information private; comply with data security standards applicable within the educational technology industry, including FTC guidelines; and comply with all applicable federal and state laws protecting consumer Private Information.

43.    As FERPA-covered business entities, as discussed infra, PowerSchool is required to take appropriate steps to safeguard students' Private Information.

---

[10] Carly Page, *What PowerSchool isn't saying about its 'massive' student data breach*, TECHCRUNCH (Jan. 22, 2025), https://techcrunch.com/2025/01/22/what-powerschool-isnt-sayingaboutits-massive-student-data-breach/ (last visited Apr. 11, 2025).

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

**PowerSchool's Privacy Policies and Practices**

44.    PowerSchool's website states: "As a provider of innovative K-12 software and cloud-based solutions to improve educational outcomes and simplify school operations, central to our operations is the processing of personal data, PowerSchool places great importance and value on the proper handling of personal data that flows within our product as we provide services to our customers."[11]

45.    Consistent with this ethos, PowerSchool's Global Privacy Statement promises its customers and end users: "We seek to protect our customers' personal data from unauthorized access, use, modification, disclosure, loss, or theft by leveraging various reasonable security measures and methods to secure our customers' personal data throughout its processing lifecycle with PowerSchool applications. Our overall aim is to ensure the confidentiality, integrity, and availability of our customers' personal data by leveraging technical, organizational, and where appropriate, physical security methods."[12]

46.    Under "Frequently Asked Questions," PowerSchool represents that it protects data by using "state-of-the-art, and appropriate physical, technical, and administrative security measures to protect the personal data that we process."[13]

47.    PowerSchool promises its customers and end users that it "only process[es] collected personal data for the specified, legitimate business purpose we stated before or at the point of collection" and will "take steps to inform you" of any unspecified, additional use. Individuals whose Private Information is collected, stored, and used by PowerSchool have "the

---

[11] *Global Privacy Statement*, *supra* note 2.

[12] *Id.*

[13] *Id.*

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

right to opt out of [data] processing" and to "withdraw given consents" for PowerSchool's access to their data.[14]

48.    Further, PowerSchool promises to "retain[] personal data only for as long as necessary to advance the processing purpose for which personal data has been provided to us or disclosed to us by a user." PowerSchool's policies therefore include data retention guidelines and it "periodically review[s] processed personal data to determine deletion and ensure personal data is not kept longer than necessary."[15]

49.    PowerSchool also admits that it is required to "strictly and proactively follow[] all legal, regulatory, and voluntary requirements for protecting student privacy including federal laws such the Family Educational Rights and Privacy Act (FERPA), the Child Online Privacy Protection Act (COPPA) and state regulations, such as California's Student Online Personal Information Protection Act (SOPIPA) and its variants."[16]

50.    In addition to its legal duties and contractual obligations inherent in the Global Privacy Statement, PowerSchool also holds itself out as a thought leader in the student data protection space, routinely publishing resources for school districts on legal obligations and best practices regarding students' Private Information.[17]

---

[14] *Id.*

[15] *Id.*

[16] Darron Flagg, *PowerSchool's Commitment to Protecting Student Data Privacy* (Apr. 22, 2024), POWERSCHOOL, https://www.powerschool.com/blog/commitment-to-protecting-student-data-privacy/ (last visited Apr. 11, 2025).

[17] *See, e.g.*, *id.*; *K-12 Cybersecurity: A Guide to Online Safety in 2025* (Jan. 22, 2025), POWERSCHOOL, https://www.powerschool.com/blog/cybersecurity-in-schools/; *The ROI of Cybersecurity in K-12* (Oct. 18, 2024), POWERSCHOOL, https://www.powerschool.com/blog/the-roi-of-cybersecurity-in-k12/; *Top 6 Best Practices for Improving Student Information System (SIS) Cybersecurity* (Sept. 10, 2024), POWERSCHOOL, https://www.powerschool.com/blog/best-practices-improving-sis-cybersecurity/; *Protect Your*

CLASS ACTION COMPLAINT

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

51.    PowerSchool also claims to have "rescued" Indianapolis Public Schools following a 2020 ransomware attack,[18] and routinely advises on cyberattack management.[19]

52.    PowerSchool is therefore well aware of the particular sensitivity of student and employee data, the legal and contractual obligations to secure that data, the challenges of data security in this rapidly-changing climate, and the foreseeability and ubiquity of data breach—particularly when sensitive and immutable Private Information is at stake.

53.    By directly or indirectly collecting, processing, and storing Plaintiffs' and Class members' Private Information, PowerSchool assumed legal and equitable duties to protect such information. By its own repeated telling, PowerSchool knew that it was responsible for protecting this Private information from disclosure.

54.    What happened next was therefore both known and wholly foreseeable to PowerSchool.

---

*School: Essential Cybersecurity Practices for Educators* (Aug. 12, 2024), POWERSCHOOL, https://www.powerschool.com/blog/protect-your-school-cybersecurity-best-practices/;
*Furthering Education Technology Privacy and Security Through Collaboration* (Aug. 6, 2024), POWERSCHOOL, https://www.powerschool.com/blog/furthering-education-technology-privacy-and-security/; *Student Data Privacy: Everything You Need to Know* (June 20, 2023), POWERSCHOOL, https://www.powerschool.com/blog/student-data-privacy-everything-you-need-to-know/; *Your Comprehensive Guide to School Cybersecurity Resources* (Apr. 7, 2023), POWERSCHOOL, https://www.powerschool.com/blog/cybersecurity-resources-to-protect-student-data-and-privacy/; *School Cybersecurity: 5 Tips for Digital K-12 Operations* (Mar. 29, 2023), POWERSCHOOL, https://www.powerschool.com/blog/school-cybersecurity-5-tips-for-k-12-operations/; *Tips for Creating a Successful K-12 Cybersecurity Plan* (Feb. 21, 2023), POWERSCHOOL, https://www.powerschool.com/blog/successful-k12-cybersecurity-plan-tips/; *Protecting Student Privacy in a Digital Age* (Feb. 29, 2016), POWERSCHOOL, https://www.powerschool.com/blog/protecting-student-privacy-digital-age/.

[18] *Case Study: PowerSchool's Cloud Rescues Indianapolis Public Schools*, POWERSCHOOL, https://www.powerschool.com/case-studies/cloud-based-hosting-for-ransomware-recovery/ (last visited Apr. 11, 2025).

[19] *See, e.g.*, *Top Lessons from One of the Biggest Recent K-12 Cyberattacks* (Mar. 22, 2023), POWERSCHOOL, https://www.powerschool.com/blog/top-lessons-from-k12-cyberattacks/ (describing lessons learned from Los Angeles Unified School District data breach).

13

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

**The Data Breach**

55.     On December 19, 2024, financially motivated hackers were able to use compromised credentials to access PowerSource, a "community-focused customer portal" owned and managed by PowerSchool.[20]

56.     When used appropriately, PowerSource is a customer-support portal for all PowerSchool products and is "available to all district and school staff, including teachers, administrators and IT staff" affiliated with a PowerSchool customer.[21]

57.     PowerSchool has admitted that at the time of the data breach, PowerSource did not support (let alone require) multi-factor authentication, a standard information security control that on its own would have prevented this Data Breach.[22]

58.     Between December 19 and December 23, the cybercriminals explored PowerSchool's systems and then used automated scripts to exfiltrate data from PowerSchool's "Students and Teachers" database table.[23]

59.     This timeline reveals systemic failures to implement and maintain industry-standard data security systems. PowerSchool's own data security systems did not alert it to the intrusion, even though the hackers were active for several days. In fact, subsequent forensic

---

[20] Page, *supra* note 10 (quoting PowerSchool spokesperson Beth Keebler); *see also* CrowdStrike, *Investigation Report Prepared for PowerSchool Group LLC* at 5 (Feb. 28, 2025), https://www.powerschool.com/wp-content/uploads/2025/03/PowerSchool-CrowdStrike-Final-Report.pdf.

[21] *PowerSource*, https://support.powerschool.com/ (last visited Apr. 11, 2025).

[22] *See* Page, *supra* note 10.

[23] *See* CrowdStrike, *supra* note 20, at 5; Andy Lombardo, *The PowerSchool Data Breach: What we know today, how to check your exposure, and how to see what fields were exfiltrated* (Jan. 9, 2025), EDTECHIRL.COM, https://www.edtechirl.com/p/the-powerschool-data-breach-what.

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

examination of the hackers' system reconnaissance between December 19 and December 23 produced 15 terabytes of log files.[24]

60.     Alternatively, PowerSchool possessed industry-standard, adequate intrusion detection systems but failed to heed the systems' warnings.

61.     Either way, PowerSchool's negligence and/or recklessness permitted the hackers to remain in their systems and to exfiltrate Private Information belonging to millions of individuals. Further, hackers were able to aggregate millions of records into two very large files for export and to exfiltrate the data without PowerSchool's notice—another failure of PowerSchool's information security controls.[25]

62.     In fact, PowerSchool only learned of the Data Breach on December 28, 2024, thanks to an external source: the cybercriminals, who demanded a ransom.[26]

63.     On January 7, 2025, PowerSchool notified impacted customers—that is, its school district clients, not the end users whose data was stolen—of the Data Breach via email.[27]

64.     In that email to its customers, PowerSchool stated that it had "taken all appropriate steps to prevent the data involved from further unauthorized access or misuse" and that it "believe[s]" that the data "has been deleted without any further replication or dissemination."[28]

---

[24] *See* Lombardo, *supra* note 23.

[25] *Id.*

[26] *See* Collier, *supra* note 3.

[27] *See* Lombardo, *supra* note 23.

[28] *Id.* (including link to January 7 email from PowerSchool to "Valued Customer").

15

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

65.    News outlets have interpreted this as near-proof that PowerSchool paid a ransom to the cybercriminals responsible, but PowerSchool refuses to admit what the hacker demanded or what it paid in ransom. Further, PowerSchool "has repeatedly declined" requests to provide evidence to back up its assertion that the stolen data has been deleted.[29]

66.    On January 13, PowerSchool posted the first description of the Data Breach on its website, indicating that its investigation of the incident was ongoing and admitting that "some personally identifiable information (PII), such as social security numbers (SSN) and medical information, was involved" in the Data Breach.[30]

67.    It was not until January 29 that PowerSchool began notifying the real victims of the Data Breach—the students and teachers whose data was stolen, including Plaintiffs and Class members.

68.    Since its initial website post, PowerSchool has posted five additional updates for regulators, customers, and other impacted parties in the United States.[31] PowerSchool has now confirmed that "exfiltration of personal information from certain PowerSchool Student Information System (SIS) environments" accessed through PowerSource, and that it has no evidence of continued unauthorized activity by hackers. It has also confirmed that names, contact information, dates of birth, medical alert information, Social Security Numbers were exfiltrated.[32]

---

[29] *See* Page, *supra* note 10.

[30] *Update* (Jan. 13, 2025), POWERSCHOOL, https://www.powerschool.com/security/sis-incident/ (last visited Apr. 11, 2025).

[31] *Summary Update* (Mar. 7, 2025), POWERSCHOOL, https://www.powerschool.com/security/sis-incident/ (last visited Apr. 11, 2025) (listing "General" and "U.S." updates from January 17, January 24, January 27, January 29, and March 7, 2025).

[32] *Id.*

CLASS ACTION COMPLAINT

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

69.     On March 7, 2025, in the latest of these website updates, PowerSchool also released the Data Breach forensic report prepared by cybersecurity expert CrowdStrike. The CrowdStrike report revealed that a hacker had used the same compromised PowerSource credentials to access PowerSchool's network four months earlier—between August 16, 2024 and September 17, 2024.[33] CrowdStrike's findings indicate, therefore, that the hacker—or multiple hackers—had access to PowerSchool's systems for months before one of the criminals involved alerted the company to the Data Breach by demanding a ransom.

70.     Despite the release of CrowdStrike's (very cursory) report, many questions about the Data Breach remain unanswered, the most significant of which is the number of individuals involved. In January 2025, cybersecurity news outlet Bleeping Computer reported that, according to "multiple sources," the hackers had exfiltrated Private Information belonging to more than 62 million students and 9.5 million teachers across North America.[34]

71.     PowerSchool refuses to confirm the number of individuals impacted by the Data Breach, but multiple PowerSchool customers have confirmed that "all" data on their students and staff—in some cases going back decades—was stolen by the criminals.[35]

72.     And despite the release of CrowdStrike's forensic report, also unknown is how the hackers—who have not been named—acquired a compromised credential for PowerSource, the customer service portal through which they gained access to PowerSchool's systems.[36]

---

[33] See CrowdStrike, *supra* note 20, at 5.

[34] Abrams, *supra* note 5.

[35] See Page, *supra* note 10.

[36] See Page, *supra* note 10; *Summary Update*, *supra* note 31.

17

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

**Plaintiffs' Private Information Has Value**

73.     Criminal actors highly value PHI and PII. Such information is continually traded on underground marketplaces, including on the dark web, a section of the internet that cannot be accessed through standard web browsers.

74.     Hackers particularly value Private Information belonging to children and minors, which may be used to perpetrate identity theft that may go undetected for years, only to be discovered when the child becomes an adult and attempts, for example, to take out a student loan or sign up for their first credit card.[37]

75.     In this respect, minor children are "often a blank slate for fraudsters who can apply for credit and take out loans in their name."[38]

76.     Such exposure can have immediate and long-term consequences for children. As explained by one cybersecurity professional whose son's school was hacked in an unrelated incident, "It's your future. It's getting into college, getting a job. It's everything."[39]

77.     And as PowerSchool itself has observed, such breaches can severely harm children in a variety of ways, as they "could result in the loss or misuse of proprietary and confidential school, student (including prospective student), employee, and company information, or harm the safety, wellbeing, or academic outcomes of students, all of which could subject us to significant liability, or interrupt our business, potentially over an extended

---

[37] *See How To Protect Your Child From Identity Theft* (Oct. 2024), U.S. FED. TRADE COMM'N, https://consumer.ftc.gov/articles/how-protect-your-child-identity-theft.

[38] *Are My Children at Risk of Identity Theft?*, EQUIFAX, https://www.equifax.com/personal/education/identity-theft/articles/-/learn/child-identity-theft (last visited Apr. 12, 2025).

[39] Natasha Singer, *A Cyberattack Illuminates the Shaky State of Student Privacy*, THE NEW YORK TIMES (July 31, 2022), https://www.nytimes.com/2022/07/31/business/student-privacy-illuminate-hack.html (last visited Apr. 12, 2025).

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

period of time. For example, data breaches or failures could result in a student's grades being misreported on that student's transcripts, which could negatively affect students' emotional health and educational and career prospects."[40]

78.    The kind of information exposed in the Data Breach poses a significant risk to Plaintiffs and Class Members. Unlike data breaches that involve credit card information, the information stolen here includes immutable personal data.

79.    SSNs are one of the most detrimental forms of Private Information to have stolen because they may be used for many fraudulent purposes and are extremely difficult to change.

80.    According to the Social Security Administration, each time an individual's SSN is compromised, "the potential for a thief to illegitimately gain access to bank accounts, credit cards, driving records, tax and employment histories and other private information increases."[41] Moreover, "[b]ecause many organizations still use SSNs as the primary identifier, exposure to identity theft and fraud remains."[42] These realities are, of course, all the more perilous for children and minors.

81.    An individual cannot obtain a new SSN without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of

---

[40] PowerSchool Holdings, Inc., *Form 10-K for the fiscal year ended December 31, 2023*, https://s27.q4cdn.com/190453437/files/doc_financials/2023/q4/e46cee20-6b81-44d3-8885-dfccd31cd637.pdf.

[41] *See Avoid Identity Theft: Protect Social Security Numbers*, U.S. Soc. Sec. Phila. Reg., https://www.ssa.gov/phila/ProtectingSSNs.htm#:~:text=An%20organization's%20collection%20and%20use (last visited Apr. 11, 2025).

[42] *Id.*

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

identity fraud via SSN is not permitted; an individual must show evidence of actual, ongoing fraud to obtain a new number.

82.     Even then, a new SSN may not be effective in putting a stop to identity theft. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[43]

83.     Similarly, the California state government warns consumers that: "[o]riginally, your Social Security number (SSN) was a way for the government to track your earnings and pay you retirement benefits. But over the years, it has become much more than that. It is the key to a lot of your personal information. With your name and SSN, an identity thief could open new credit and bank accounts, rent an apartment, or even get a job."[44]

84.     Theft of PHI, which was also compromised in the Data Breach, is similarly serious, putting patients at risk of medical identity theft wherein "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."[45]

---

[43] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015, 4:59 AM), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft.

[44] *Your Social Security Number: Controlling the Key to Identity Theft*, CAL. DEP'T OF JUSTICE, https://oag.ca.gov/idtheft/facts/your-ssn (last visited Apr. 12, 2025).

[45] *Medical I.D. Theft*, EFRAUDPREVENTION, https://efraudprevention.net/home/education/?a=187#:~:text=A%20thief%20may%20use%20your (last visited Apr. 11, 2025).

20

CLASS ACTION COMPLAINT

85.    Medical identity theft has both financial and non-financial impacts,[46] and exposes victims to loss of reputation, loss of employment, blackmail, and other dignitary harms.

86.    For children, publication of the details of their most private medical, psychological, behavioral, and family problems has even greater potential to cause both emotional and psychological distress and longer-term financial harm.

87.    Because their Private Information has value, Plaintiffs and Class members must take significant protective measures, including years—and for children, decades—of constant surveillance of their financial and personal records, credit monitoring, and identity protection.

**PowerSchool Was Obliged to Plaintiffs and the Class to Keep Private Information Secure**

88.    PowerSchool maintains and stores the Private Information of Plaintiffs and the Class in the usual course of business.

89.    Under the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, PowerSchool was prohibited from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has determined that a company's failure to implement reasonable and appropriate data security measures to protect

---

[46] *See The Truth Behind Medical Identity Theft: What You Don't Know Can Cost You*, EXPERIAN, https://www.experianplc.com/newsroom/press-releases/2010/the-truth-behind-medical-identity-theft-what-you-don-t-know-can-cost-you (last visited Apr. 11, 2025); Andrea Peterson, *2015 is Already the Year of the Health-Care Hack—and It's Only Going to Get Worse* (Mar. 20, 2015), WASH. POST, available at http://www.washingtonpost.com/blogs/the-switch/wp/2015/03/20/2015-is-already-the-year-of-the-health-care-hack-and-its-only-going-to-get-worse/.

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

consumers' sensitive personal information constitutes an "unfair practice" in violation of the Act.[47]

90.    Under the Children's Online Privacy Protection Act ("COPPA"), 16 C.F.R. § 312.8, PowerSchool was required to "establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children" under 13.

91.    PowerSchool is also required by various state laws and regulations to protect Plaintiffs' and Class members' Private Information.

92.    In addition to its obligations under federal and state laws, PowerSchool had a duty to Plaintiffs and Class members whose Private Information PowerSchool collected and stored. This duty required PowerSchool to exercise reasonable care in acquiring, retaining, securing, safeguarding, deleting, and protecting that information from compromise, loss, theft, unauthorized access, or misuse. PowerSchool owed Plaintiffs and Class members an obligation to provide reasonable security measures, in line with industry standards and regulatory requirements, ensuring that its computer systems, networks, and personnel responsible for them adequately protected the Private Information of Plaintiffs and Class members from unauthorized exposure.

93.    PowerSchool owed a duty to Plaintiffs and Class members to design, maintain, and regularly test its computer and email systems to ensure that the Private Information in its possession was adequately secured and protected from unauthorized access or compromise.

94.    PowerSchool owed a duty to Plaintiffs and Class members to establish and enforce reasonable data security practices and procedures to protect that information. This duty

---

[47] *See generally FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

included properly training its employees and others with access to Private Information within its computer systems on how to securely handle and protect such data.

95.    PowerSchool owed a duty to Plaintiffs and Class members to maintain, update and otherwise ensure the security of PowerSchool systems.

96.    PowerSchool owed a duty to Plaintiffs and Class members to implement processes capable of detecting, investigating and thwarting a breach in its data security systems in a timely manner.

97.    PowerSchool owed a duty to Plaintiffs and Class members to disclose if its computer systems and data security practices were inadequate to protect individuals' Private Information from theft. Such an inadequacy would constitute a material fact in the decision to provide personal information to PowerSchool.

98.    PowerSchool owed a duty to Plaintiffs and Class members to promptly and accurately disclose any data breaches that occurred.

99.    PowerSchool owed a duty of care to Plaintiffs and Class members, as they were foreseeable and likely victims of any deficiencies in PowerSchool's data security practices.

**The Data Breach Was Foreseeable and Preventable**

100.    Despite the growing body of publicly available information regarding the rise of ransomware attacks and other forms of cyberattacks that compromise Private Information, and despite its own self-appointed position as a leader in defending students' Private Information from cybercriminals, PowerSchool's approach to maintaining the privacy of Plaintiffs' and Class members' Private Information was inadequate, unreasonable, negligent, and reckless.

23

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

101.    The Data Breach was clearly foreseeable to PowerSchool. The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individuals, businesses, and government entities.

102.    Schools and school districts have been particularly and increasingly targeted by cybercriminals in recent years, which has resulted in leaks of highly personal and sensitive information about children and educators, some of which perpetrators have made publicly available.

103.    From 2016 to 2022, there were over 1,600 publicly disclosed cyberattacks on K-12 schools specifically, resulting in significant monetary losses to school districts ranging from $50,000 to $1 million per school data breach.[48]

104.    The Data Breach was also clearly foreseeable to PowerSchool because, as discussed *supra*, PowerSchool was well aware that the Private Information it collects is highly sensitive and of significant value to those who would use it for wrongful purposes.

105.    Indeed, prior to its acquisition by Bain Capital, L.P., PowerSchool disclosed to shareholders that a "risk factor" was "the impact of potential information technology or data security breaches or other cyber-attacks or other disruptions[.]"[49] It admitted that "the techniques used by computer hackers and cyber criminals to obtain unauthorized access to data or to sabotage computer systems change frequently and generally are not detected until after an incident has occurred."[50]

---

[48] Juan H., *The biggest school data breaches of 2023,* PREY PROJECT BLOG (May 27, 2024) https://preyproject.com/blog/school-data-breaches-in-2023 (last visited Apr. 12, 2025).

[49] *Form 10-K*, *supra* note 40.

[50] *Id.*

24

CLASS ACTION COMPLAINT

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

106.    Given that PowerSchool took Private Information from Plaintiffs and Class members, PowerSchool should and could have taken reasonable measures to ensure that the Private Information generated and collected was safe from unauthorized actors.

107.    The Data Breach was the direct result of PowerSchool's failure to implement reasonable measures to secure the Private Information with which it was entrusted.

**PowerSchool Failed to Comply with FTC Guidelines**

108.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decisionmaking.

109.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal consumer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[51]

110.    The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[52]

---

[51] *Protecting Personal Information: A Guide for Business*, U.S. FED. TRADE COMM'N (2016), available at https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.

[52] *See id.*

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

111.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

112.    These measures are, of course, largely similar to those recommended by PowerSchool itself in its public postings on cybersecurity.

113.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

114.    These FTC enforcement actions include actions against educational companies, like PowerSchool.

115.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as PowerSchool, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of PowerSchool's duty in this regard.

116.    PowerSchool failed to properly implement basic data security practices.

117.    PowerSchool's failure to employ reasonable and appropriate measures to protect against unauthorized access to the Private Information of its students and employees or to

26

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

118.    Upon information and belief, PowerSchool was at all times fully aware of its obligation to protect the PII of its students and employees, and of the significant repercussions that would result from its failure to do so. Accordingly, PowerSchool's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Class.

**PowerSchool Failed to Comply with Industry Standards**

119.    PowerSchool's cybersecurity practices and policies were inadequate, falling short of the industry-standard measures that should have been implemented long before the Breach occurred. As outlined *infra*, PowerSchool released frequent blog posts describing the sensitivity of Private Information collected and stored by PowerSchool and its customers and the risks posed by data breaches and held itself out as an industry thought leader and "rescuer" of other entities impacted by security incidents.

120.    Experts studying cyber security routinely identify educational companies in possession of Private Information. as being particularly vulnerable to cyberattacks because of the value of the data which they collect and maintain.

121.    Several best practices have been identified that, at a minimum, should be implemented by educational companies in possession of Private Information, like PowerSchool, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multifactor authentication; backup data and limiting which

27

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

employees can access sensitive data. PowerSchool failed to follow these industry best practices, including a failure to implement multifactor authentication.

122.    Other best cybersecurity practices that are standard for educational companies include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

123.    PowerSchool failed to follow these cybersecurity best practices, including failure to train staff.

124.    PowerSchool failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

125.    These foregoing frameworks are existing and applicable industry standards for educational companies, and upon information and belief, PowerSchool failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

**PowerSchool's Failures Caused Common Injuries**

126.    As a result of PowerSchool's ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to the Plaintiffs and Class members has

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

materialized and is imminent, and Plaintiffs and Class members have all sustained actual injuries and damages, including: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in PowerSchool's possession and is subject to further unauthorized disclosures so long as PowerSchool fails to undertake appropriate and adequate measures to protect the data.

### *Data Breaches Increase Victims' Risk of Identity Theft*

127. The unencrypted Private Information of Plaintiffs and Class members will end up for sale on the dark web as that is the modus operandi of hackers.

128. Unencrypted Private Information may also fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiffs and Class members. Simply put, unauthorized individuals can easily access the Private Information of Plaintiffs and Class members.

129. The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

130.    Plaintiffs' and Class members' Private Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of ways for criminals to exploit Plaintiffs and Class members and to profit off their misfortune.

### *Loss of Time to Mitigate Risk of Identity Theft and Fraud*

131.    As a result of the recognized risk of identity theft, when a Data Breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet, the resource and asset of time has been lost.

132.    Plaintiffs and Class members have spent, and will spend additional time in the future, on a variety of prudent actions, such as researching and verifying the legitimacy of the Data Breach. Accordingly, the Data Breach has caused Plaintiffs and Class members to suffer actual injury in the form of lost time—which cannot be recaptured—spent on mitigation activities.

133.    Plaintiffs' mitigation efforts are also consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[53]

### *Diminution of Value of Private Information*

134.    Private Information a valuable property right. Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that PII has considerable market value.

135.    As a result of the Data Breach, Plaintiffs' and Class members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiffs or Class members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

136.    At all relevant times, PowerSchool knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiffs and Class members, and of the foreseeable consequences that would occur if PowerSchool's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class members as a result of a breach.

### *Future Costs of Credit and Identity Theft Monitoring Are Reasonable and Necessary*

137.    Given the type of targeted attack in this case, sophisticated criminal activity, and the type of Private Information involved, there is a strong probability that entire batches of

---

[53] *See* U.S. FED. TRADE COMM'N, *Identity Theft.gov*, https://www.identitytheft.gov/Steps (last visited Apr. 12, 2025).

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes, including opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

138.    Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that their Private Information was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

139.    Consequently, Plaintiffs and Class members are at an increased risk of fraud and identity theft for many years into the future.

140.    The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class member. This is reasonable and necessary cost to monitor to protect Plaintiffs and Class members from the risk of identity theft that arose from PowerSchool's Data Breach.

### *Loss of the Benefit of the Bargain*

141.    Furthermore, PowerSchool's poor data security practices deprived Plaintiffs and Class members of the benefit of their bargain. When agreeing to pay PowerSchool and/or its agents for educational services or agreeing to obtain employment at PowerSchool or one of its customers, Plaintiffs and other reasonable consumers understood and expected that they were, in part, paying for the product and/or service and necessary data security to protect their Private Information when, in fact, PowerSchool did not provide the expected data security. Accordingly, Plaintiffs and Class members received services or employment positions that

32

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

were of a lesser value than what they reasonably expected to receive under the bargains they struck with PowerSchool.

## CLASS ACTION ALLEGATIONS

142.    Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themself and the following Class, subject to amendment as appropriate:

**Nationwide Class**:

All individuals within the United States of America whose Private Information was exposed to unauthorized third parties as a result of the Data Breach experienced by PowerSchool that occurred in or about December 2024, including all persons who were sent a notice of the Data Breach (the "Class").

143.    Plaintiffs also seek certification of a California Subclass, defined as follows and subject to amendment as appropriate:

**California Subclass**:

All individuals residing in the state of California whose Private Information was exposed to unauthorized third parties as a result of the Data Breach experienced by PowerSchool that occurred in or about December 2024, including all persons who were sent a notice of the Data Breach (the "California Subclass").

144.    Excluded from the Class and California Subclass are the following individuals and/or entities: PowerSchool and PowerSchool's parents, subsidiaries, affiliates, officers and directors, and any entity in which PowerSchool has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

33

CLASS ACTION COMPLAINT

145.    Plaintiffs reserves the right to amend the above definitions or to propose additional subclasses in subsequent pleadings and motions for class certification.

146.    This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is readily ascertainable.

147.    <u>Numerosity</u>: A class action is the only available method for the fair and efficient adjudication of this controversy, as the members of the Class and California Subclass are so numerous that joinder of all members is impractical, if not impossible.

148.    <u>Commonality</u>: Plaintiff and members of the Class and California Subclass share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

a.    Whether PowerSchool had a legal duty to Plaintiffs and the Class and California Subclass to exercise due care in collecting, storing, using, and/or safeguarding their Private Information;

b.    Whether PowerSchool knew or should have known the susceptibility of its data security systems to a data breach;

c.    Whether PowerSchool's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

d.    Whether PowerSchool's failure to implement adequate data security measures allowed the Data Breach to occur;

34

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

e.  Whether PowerSchool failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

f.  Whether PowerSchool adequately, promptly, and accurately informed Plaintiffs and members of the Class and California Subclass that their Private Information had been compromised;

g.  How and when PowerSchool actually learned of the Data Breach;

h.  Whether PowerSchool's conduct, including their failure to act, resulted in or was the proximate cause of the breach of PowerSchool's systems, resulting in the loss of the Private Information of Plaintiffs and Class and California Subclass members;

i.  Whether PowerSchool adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.  Whether PowerSchool engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiffs and members of the Class and California Subclass;

k.  Whether Plaintiffs and Class and California Subclass members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or accounting is/are appropriate as a result of PowerSchool's wrongful conduct; and

l.  Whether Plaintiffs and Class and California Subclass members are entitled to restitution as a result of PowerSchool's wrongful conduct.

35

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

149.    <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Class and California Subclass. Plaintiffs and all members of the Class and California Subclass sustained damages arising out of and caused by PowerSchool's common course of conduct in violation of law, as alleged herein.

150.    <u>Adequacy of Representation</u>: Plaintiffs in this class action are adequate representatives of the Class and California Subclass in that the Plaintiffs have the same interest in the litigation of this case as members of the Class and California Subclass, are committed to the vigorous prosecution of this case, and have retained competent counsel who are experienced in conducting litigation of this nature.

151.    Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to other Class or California Subclass Members or the Class and California Subclass in their entirety. Plaintiffs anticipate no management difficulties in this litigation.

152.    <u>Superiority of Class Action</u>: Because the damages suffered by individual Class and California Subclass members, although not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for members of the Class and California Subclass to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Class and California Subclass, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

153.    The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class and California Subclass

36

CLASS ACTION COMPLAINT

members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

154.    This class action is also appropriate for certification because PowerSchool has acted or refused to act on grounds generally applicable to Class and California Subclass members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class and California Subclass members and making final injunctive relief appropriate with respect to the Class and California Subclass in their entirety.

155.    PowerSchool's policies and practices challenged herein apply to and affect Class and California Subclass members uniformly and Plaintiffs' challenge of these policies and practices hinges on PowerSchool's conduct with respect to the Class and California Subclass in their entirety, not on facts or law applicable only to Plaintiffs.

156.    Unless Class-wide and California Subclass-wide injunctions are issued, PowerSchool may continue failing to properly secure the Private Information of Class and California Subclass members, and PowerSchool may continue to act unlawfully as set forth in this Complaint.

157.    Further, PowerSchool has acted or refused to act on grounds generally applicable to the Class and California Subclass and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class and California Subclass members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

37

CLASS ACTION COMPLAINT

## CAUSES OF ACTION

### COUNT I

### Negligence
#### *On Behalf of Plaintiffs and the Nationwide Class*

158.    Plaintiffs reallege and reincorporate every allegation set forth in the preceding paragraphs as though fully set forth herein.

159.    At all times herein relevant, PowerSchool owed Plaintiffs and Class members a duty of care, inter alia, to act with reasonable care to secure and safeguard their Private Information and to use commercially reasonable methods to do so. PowerSchool took on this obligation upon accepting and storing the Private Information of Plaintiffs and Class members in their computer systems and on their networks.

160.    Among these duties, PowerSchool was expected:

    a.    to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in their possession;

    b.    to protect Plaintiffs' and Class members' Private Information using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

    c.    to implement processes to detect the Data Breach quickly and to timely act on warnings about data breaches; and

    d.    to promptly notify Plaintiffs and Class members of any data breach, security incident, or intrusion that affected or may have affected their Private Information.

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

161.    PowerSchool knew that the Private Information was private and confidential and should be protected as private and confidential and, thus, PowerSchool owed a duty of care not to subject Plaintiffs and Class members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

162.    PowerSchool knew, or should have known, of the risks inherent in collecting and storing Private Information, the vulnerabilities of their data security systems, and the importance of adequate security.

163.    PowerSchool knew about numerous, well-publicized data breaches.

164.    PowerSchool knew, or should have known, that their data systems and networks did not adequately safeguard Plaintiffs' and Class members' Private Information.

165.    Only PowerSchool was in the position to ensure that its systems and protocols were sufficient to protect the Private Information that Plaintiffs and Class members had entrusted to them.

166.    PowerSchool breached its duties to Plaintiffs and Class members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard their Private Information.

167.    Because PowerSchool knew that a breach of its systems could damage thousands of individuals, including Plaintiffs and Class members, PowerSchool had a duty to adequately protect its data systems and the Private Information contained therein.

168.    Plaintiffs' and Class members' willingness to entrust PowerSchool with their Private Information was predicated on the understanding that PowerSchool would take adequate security precautions.

39

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

169.    Moreover, only PowerSchool had the ability to protect its systems and the Private Information stored on them from attack. Thus, PowerSchool had a special relationship with Plaintiffs and Class members.

170.    PowerSchool also had independent duties under state and federal laws that required PowerSchool to reasonably safeguard Plaintiffs' and Class members' Private Information and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between PowerSchool, Plaintiffs, and/or the remaining Class members.

171.    PowerSchool breached its general duty of care to Plaintiffs and Class members in, but not necessarily limited to, the following ways:

    a.    by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiffs and Class members;

    b.    by failing to timely and accurately disclose that Plaintiffs and Class members' Private Information had been improperly acquired or accessed;

    c.    by failing to adequately protect and safeguard the Private Information by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured Private Information;

    d.    by failing to provide adequate supervision and oversight of the Private Information with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted

40

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

an unknown third party to gather Private Information of Plaintiffs and Class members, misuse the Private Information and intentionally disclose it to others without consent;

e.  by failing to adequately train its employees not to store Private Information longer than absolutely necessary;

f.  by failing to consistently enforce security policies aimed at protecting Plaintiffs' and the Class members' Private Information;

g.  by failing to implement processes to detect data breaches, security incidents, or intrusions quickly; and

h.  by failing to encrypt Plaintiffs' and Class members' Private Information and monitor user behavior and activity in order to identify possible threats.

172.    PowerSchool's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

173.    As a proximate and foreseeable result of PowerSchool's grossly negligent conduct, Plaintiffs and Class members have suffered damages and are at imminent risk of additional harm and damages.

174.    The law further imposes an affirmative duty on PowerSchool to timely disclose the unauthorized access and theft of the Private Information to Plaintiffs and Class members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences and thwart future misuse of their Private Information.

175.    PowerSchool breached their duty to notify Plaintiff and Class Members of the unauthorized access by waiting weeks after learning of the Data Breach to provide direct

41

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

notification to Plaintiffs and Class members and then by failing and continuing to fail to provide Plaintiffs and Class members sufficient information regarding the breach.

176.    124.    To date, PowerSchool has not provided sufficient information to Plaintiffs and Class members regarding the extent of the unauthorized access and continue to breach its disclosure obligations to Plaintiffs and Class members.

177.    Further, through PowerSchool's failure to provide timely and clear notification of the Data Breach to Plaintiffs and Class members, PowerSchool prevented Plaintiffs and Class members from taking meaningful, proactive steps to secure their Private Information.

178.    There is a close causal connection between PowerSchool's failure to implement security measures to protect the Private Information of Plaintiffs and Class members and the harm suffered, or risk of imminent harm suffered by Plaintiffs and Class members.

179.    Plaintiffs' and Class members' Private Information was accessed as the proximate result of PowerSchool's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

180.    PowerSchool's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

181.    The damages Plaintiffs and Class members have suffered (as alleged above) and will suffer were and are the direct and proximate result of PowerSchool's grossly negligent conduct.

182.    As a direct and proximate result of PowerSchool's negligence, Plaintiffs and Class members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their Private Information is used; (iii) the

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to, efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft; (vi) the continued risk to their Private Information, which may remain in PowerSchool's possession and is subject to further unauthorized disclosures so long as PowerSchool fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class members' Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class members.

183.    As a direct and proximate result of PowerSchool's negligence and negligence per se, Plaintiffs and Class members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

184.    Additionally, as a direct and proximate result of PowerSchool's negligence, Plaintiffs and Class members have suffered and will suffer the continued risks of exposure of their Private Information, which remain in PowerSchool's possession and are subject to further unauthorized disclosures so long as PowerSchool fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

## COUNT II

### Negligence Per Se
#### *On Behalf of Plaintiffs and the Nationwide Class*

185.    Plaintiffs reallege and incorporate by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

186.    Under the FTCA, 15 U.S.C. § 45, PowerSchool had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class members' Private Information.

187.    PowerSchool violated Section 5 of the FTCA by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards as described in detail herein.

188.    PowerSchool's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of a data breach involving Private Information of its consumers.

189.    Plaintiffs and Class members are consumers within the class of persons Section 5 of the FTCA was intended to protect.

190.    The harm that has occurred as a result of PowerSchool's conduct is the type of harm that the FTCA was intended to guard against.

191.    As a direct and proximate result of PowerSchool's negligence *per se*, Plaintiffs and Class members have suffered and will continue to suffer injuries, including but not limited to those described herein.

## COUNT III

### Breach of Implied Contract
#### *On Behalf of Plaintiffs and the Nationwide Class*

44

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

192.    Plaintiffs reallege and incorporate by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

193.    Through their course of conduct, PowerSchool, Plaintiff and Class members entered into implied contracts for PowerSchool to implement data security adequate to safeguard and protect the privacy of Plaintiffs' and Class members' Private Information.

194.    PowerSchool required Plaintiffs and Class members to provide and entrust their Private Information as a condition of obtaining PowerSchool's services.

195.    PowerSchool solicited and invited Plaintiffs and Class members to provide their Private Information as part of PowerSchool's regular business practices.

196.    Plaintiffs and Class members accepted PowerSchool's offers and provided PowerSchool with their Private Information

197.    In so doing, Plaintiffs and Class members entered into implied contracts with PowerSchool by which PowerSchool agreed to safeguard and protect Private Information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and Class members if their data had been breached and compromised or stolen.

198.    A meeting of the minds occurred when Plaintiffs and Class members agreed to, and did, provide their Private Information to PowerSchool in exchange for, amongst other things, the protection of their Private Information.

199.    Plaintiffs and Class members fully performed their obligations under the implied contracts with PowerSchool.

200.    PowerSchool breached their implied contracts with Plaintiffs and Class members—and with their school district customers—by failing to safeguard and protect their

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

Private Information and by failing to provide timely and accurate notice to them that their Private Information was compromised as a result of the Data Breach.

201.    As a direct and proximate result of PowerSchool's above-described breach of implied contract, Plaintiffs and Class members have suffered (and will continue to suffer) (a) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (b) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (c) loss of the confidentiality of the stolen confidential data; (d) the illegal sale of the compromised data on the dark web; (e) lost work time; and (f) other economic and non-economic harm.

## COUNT IV

### Third-Party Beneficiary Claim for Breach of Contract
### *On Behalf of Plaintiffs and the Nationwide Class*

202.    Plaintiffs reallege and incorporate by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

203.    PowerSchool entered contracts with its customers to provide services that explicitly or implicitly included data security practices, procedures, and protocols sufficient to safeguard the Private Information that was to be entrusted to it.

204.    Indeed, because such safeguards are required by industry standard and applicable statutory, common, and regulatory law, the implementation and maintenance of such safeguards is required to fulfill a party's contractual obligations of good faith and fair dealing in their performance.

205.    Such contracts were made expressly for the benefit of Plaintiff and the Class, as it was their Private Information that PowerSchool agreed to receive and protect through its

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

services. Thus, the benefit of collection and protection of the Private Information belonging to Plaintiffs and Class members was the direct and primary objective of the contracting parties, and Plaintiff and Class members were direct and express beneficiaries of such contracts. The sole purpose of the contracts was to enable the provision of education and employment-related services to Plaintiffs and Class members.

206.    PowerSchool knew that if it were to breach these contracts with its customers, Plaintiff and Class members would be harmed.

207.    PowerSchool breached its contracts with its customers and, as a result, Plaintiffs and Class members were affected by this Data Breach when PowerSchool failed to employ reasonable data security and/or business associate monitoring measures that could have prevented the Data Breach.

208.    As foreseen, Plaintiffs and Class members were harmed by PowerSchool's failure to use reasonable data security measures to securely store and protect the files in its care, including but not limited to, the continuous and substantial risk of harm through the loss of their Private Information and the loss of control over how it was used and who had access to it.

209.    As a direct and proximate result of PowerSchool's conduct, Plaintiffs and Class members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent

47

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Private Information, which remains in PowerSchool's possession and is subject to further unauthorized disclosures so long as PowerSchool fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession; (vi) future costs in terms of time, effort, and money that will be expended as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class members; and (vii) the diminished value of the services they paid for and received.

210.    Accordingly, Plaintiffs and Class members are entitled to damages in an amount to be determined at trial, along with costs and attorneys' fees incurred in this action.

## COUNT V

### Breach of Fiduciary Duty
### *On Behalf of Plaintiffs and the Nationwide Class*

211.    Plaintiffs reallege and incorporate by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

212.    Given the relationship between PowerSchool and Plaintiffs and Class members, where PowerSchool became guardian of Plaintiffs' and Class members' Private Information, PowerSchool became a fiduciary by its undertaking and guardianship of the Private Information, to act primarily for Plaintiffs and Class members: (1) for the safeguarding of Plaintiffs and Class members' Private Information; (2) to timely notify Plaintiffs and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information PowerSchool stores.

48

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

213.    PowerSchool has a fiduciary duty to act for the benefit of Plaintiffs and Class members upon matters within the scope of PowerSchool's relationship with them—especially to secure their Private Information.

214.    Because of the highly sensitive nature of the Private Information, Plaintiffs and Class members (or their third-party agents) would not have entrusted PowerSchool, or anyone in PowerSchool's position, to retain their Private Information had they known the reality of PowerSchool's inadequate data security practices.

215.    PowerSchool breached its fiduciary duties to Plaintiffs and Class members by failing to sufficiently encrypt or otherwise protect their Private Information.

216.    PowerSchool also breached its fiduciary duties to Plaintiffs and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

217.    As a direct and proximate result of PowerSchool's breach of its fiduciary duties, Plaintiffs and Class members have suffered and will continue to suffer numerous injuries, as detailed *supra*.

### <u>COUNT VI</u>

**Unjust Enrichment**
***On Behalf of Plaintiffs and the Nationwide Class***

218.    Plaintiffs reallege and reincorporate every allegation set forth in the preceding paragraphs as though fully set forth herein.

219.    By its wrongful acts and omissions described herein, PowerSchool has obtained a benefit by unduly taking advantage of Plaintiffs and Class members.

49

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

220.    PowerSchool, prior to and at the time Plaintiffs and Class members entrusted their Private Information to PowerSchool, caused Plaintiffs and Class members to reasonably believe that PowerSchool would keep such Private Information secure.

221.    PowerSchool was aware, or should have been aware, that reasonable students, employees, and customers would have wanted their Private Information kept secure and would not have contracted with PowerSchool, directly or indirectly, had they known that PowerSchool's information systems were sub-standard for that purpose.

222.    PowerSchool was also aware that, if the substandard condition of and vulnerabilities in their information systems were disclosed, it would negatively affect Plaintiffs', Class members', and other customers' decisions to seek services therefrom.

223.    PowerSchool failed to disclose facts pertaining to their substandard information systems, defects, and vulnerabilities therein before Plaintiffs, Class members, and other customers made their decisions to engage in commerce therewith and seek services or information.

224.    Instead, PowerSchool suppressed and concealed such information. By concealing and suppressing that information, PowerSchool denied Plaintiffs, Class members, and customers the ability to make a rational and informed purchasing and servicing decision and took undue advantage of Plaintiffs and Class members.

225.    PowerSchool was unjustly enriched at the expense of Plaintiffs and Class members, as PowerSchool received profits, benefits, and compensation, in part, at the expense of Plaintiffs and Class members; however, Plaintiffs and Class members did not receive the benefit of their bargain because they paid for products and or services that did not satisfy the purposes for which they bought/sought them.

50

CLASS ACTION COMPLAINT

226.    Since PowerSchool's profits, benefits, and other compensation were obtained improperly, PowerSchool is not legally or equitably entitled to retain any of the benefits, compensation, or profits realized from these transactions.

227.    Plaintiffs and Class members seek an Order of this Court requiring PowerSchool to refund, disgorge, and pay as restitution any profits, benefits, and other compensation obtained by PowerSchool from its wrongful conduct and/or the establishment of a constructive trust from which Plaintiffs and Class members may seek restitution.

## <u>COUNT VII</u>

### Invasion of Privacy
### *On Behalf of Plaintiffs and the Nationwide Class*

228.    Plaintiffs herein repeat, reallege and fully incorporate all allegations in all preceding paragraphs.

229.    Plaintiffs and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

230.    PowerSchool owed a duty to its current and former users, including Plaintiffs and the Class, to keep this information confidential.

231.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiffs and Class members' Private Information is highly offensive to a reasonable person.

232.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiffs and the Class (or their third-party agents) disclosed their sensitive and confidential information to PowerSchool, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiffs

51

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

233.    The Data Breach constitutes an intentional interference with Plaintiffs' and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

234.    PowerSchool acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

235.    PowerSchool acted with a knowing state of mind when it failed to notify Plaintiffs and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

236.    Acting with knowledge, PowerSchool had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiffs and the Class.

237.    As a proximate result of PowerSchool's acts and omissions, the Private Information of Plaintiffs and Class members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiffs and Class members to suffer damages, as detailed *supra*.

238.    And, on information and belief, Plaintiffs' Private Information already been published—or will be published imminently—by cybercriminals on the Dark Web.

239.    Unless and until enjoined and restrained by order of this Court, PowerSchool's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Class as their Private Information is still maintained by PowerSchool and thus remains subject to PowerSchool's inadequate cybersecurity system and policies.

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

240.    Plaintiffs and the Class have no adequate remedy at law for the injuries relating to PowerSchool's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end PowerSchool's inability to safeguard Private Information belonging to Plaintiffs and Class members.

241.    In addition to injunctive relief, Plaintiffs, on behalf of themselves and the other Class members, also seeks compensatory damages for PowerSchool's invasion of privacy, which includes the value of the privacy interest invaded by PowerSchool, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

## COUNT VIII

**Violations of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150**
*On Behalf of Plaintiffs and the California Sub-Class*

242.    Plaintiffs herein repeat, reallege and fully incorporate all allegations in all preceding paragraphs.

243.    Plaintiffs and California Subclass members are "consumer[s]" as that term is defined in Cal. Civ. Code. § 1798.140(g), because they are natural persons and California residents.

244.    PowerSchool is a "business" as that term is defined in Cal. Civ. Code. § 1798.140(c) because it has annual gross revenues exceeding $25 million, and it buys, receives, sells, and shares personal information of 50,000 or more consumers, households, or devices.

245.    Plaintiffs' and California Subclass members' Private Information is "nonencrypted and nonredacted personal information" consisting of SSNs, names, addresses and other sensitive medical and personal information. Cal. Civ. Code § 1798.150(a)(1). The

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

Data Breach constitutes "an unauthorized access and exfiltration, theft, or disclosure" pursuant to Cal. Civ. Code § 1798.150(a)(1) because due to PowerSchool's failure to implement reasonable and necessary security measures, they enabled third party criminals to access personal information and thus, caused unauthorized sharing of Plaintiffs' and California Subclass members' Private Information.

246.    PowerSchool had a duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the Plaintiffs' and California Subclass members' Private Information to protect said information.

247.    PowerSchool breached the duty they owed to Plaintiffs and California Subclass members as described above. PowerSchool breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the Private Information of Plaintiffs and California Subclass members; (b) detect the Data Breach while it was ongoing; and (c) maintain security systems consistent with industry standards.

248.    PowerSchool's breach of the duty they owed to Plaintiffs and the California Subclass described above was the direct and proximate cause of the Data Breach. As a result, the Plaintiffs and California Subclass members suffered damages, as described above and as will be proven at trial.

249.    Plaintiffs and California Subclass members seek injunctive relief in the form of an order enjoining PowerSchool from continuing the practices that constituted their breach of the duty owed to Plaintiffs and California Subclass members as described above.

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

## COUNT IX

**Violations of the California Confidentiality of Medical Information Act,
Cal. Civ. Code §§ 56 *et seq.*
*On Behalf of Plaintiffs and the California Sub-Class***

250.    Plaintiffs re-allege and incorporate by reference all preceding allegations, as if fully set forth herein.

251.    PowerSchool is subject to the requirements and mandates of the California Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56 *et seq.* ("CMIA").

252.    Cal. Civ. Code § 56.36 allows an individual to bring an action against a "person or entity who has negligently released confidential information or records concerning him or her in violation of this part."

253.    As a direct result of their negligent failure to adequately protect Plaintiffs' and California Subclass members' Private Information, PowerSchool allowed for a data breach which released and actually exposed that Private Information to criminals and/or unauthorized third parties.

254.    The CMIA defines "medical information" as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care . . . regarding a patient's medical history, mental or physical condition, or treatment."

255.    The CMIA defines individually identifiable information as "medical information [that] includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the [customers'] name, address, electronic mail address, telephone number, or social security number, or other information that,

55

CLASS ACTION COMPLAINT

alone or in combination with other publicly available information, reveals the individual's identity." Cal. Civ. Code § 56.050.

256.     PowerSchool is in possession of affected individuals' sensitive medical and other information. Further, the compromised data was individually identifiable because it was accompanied by elements sufficient to allow identification of the Plaintiffs by the third parties to whom the data was disclosed.

257.     PowerSchool lawfully came into possession of the Plaintiffs' and California Subclass members' medical information and had a duty pursuant to Section 56.06 and 56.101 of the CMIA to maintain, store and dispose of the Plaintiffs' and California Subclass members' medical records in a manner that preserved their confidentiality. Sections 56.06 and 56.101 of the CMIA prohibit the negligent creation, maintenance, preservation, store, abandonment, destruction, or disposal of confidential medical information. PowerSchool further violated the CMIA by failing to use reasonable care, and in fact, negligently maintained the Plaintiffs' and California Subclass members' medical information.

258.     As a direct and proximate result of PowerSchool's violations of the CMIA, Plaintiffs and California Subclass members have been injured and are entitled to compensatory damages, punitive damages, and nominal damages of $1,000 for each of PowerSchool's violations of the CMIA, as well as attorneys' fees and costs pursuant to Cal. Civ. Code § 56.36.

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

## COUNT X

**Violations of the California Unfair Competition Law,
Cal. Bus. & Prof. Code § 17200 *et seq.*
*On Behalf of Plaintiffs and the California Sub-Class***

259.    Plaintiffs re-allege and incorporate by reference all preceding allegations, as if fully set forth herein.

260.    PowerSchool is a "person" defined by Cal. Bus. & Prof. Code § 17201.

261.    PowerSchool violated Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

262.    PowerSchool's "unfair" acts and practices include:

    a.    by utilizing cheaper, ineffective security measures and diverting those funds to its own profit, instead of providing a reasonable level of security that would have prevented the Data Breach;

    b.    failing to follow industry standard and the applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data and multi-factor authentication;

    c.    failing to timely and adequately notify Plaintiffs and California Subclass members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages;

    d.    omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and California Subclass members' Private Information; and

57

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

     e.   omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and California Subclass members' Private Information.

263.   PowerSchool has engaged in "unlawful" business practices by violating multiple laws, including the FTCA, 15 U.S.C. § 45, the California Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq.*, the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56 *et seq.*, and California common law.

264.   PowerSchool's unlawful, unfair, and deceptive acts and practices include:

     a.   failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and California Subclass members' Prive Information, which was a direct and proximate cause of the Data Breach;

     b.   failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, which was a direct and proximate cause of the Data Breach;

     c.   failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and California Subclass members' Private Information, including duties imposed by the FTCA, 15 U.S.C. § 45, the California Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq.*, and the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56 *et seq.*, which was a direct and proximate cause of the Data Breach;

58

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

    d.    misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and California Subclass members' Private Information, including by implementing and maintaining reasonable security measures; and

    e.    misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and California Subclass members' Private Information, including duties imposed by the FTCA, 15 U.S.C. § 45, the California Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq.*, and the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56 *et seq.*

265.    PowerSchool's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of PowerSchool's data security and ability to protect the confidentiality of consumers' personal information.

266.    As a direct and proximate result of PowerSchool's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and California Subclass members were injured and lost money or property, which would not have occurred but for the unfair and deceptive acts, practices, and omissions alleged herein, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their personal information.

267.    PowerSchool's violations were, and are, willful, deceptive, unfair, and unconscionable.

268.    Plaintiffs and California Subclass members have lost money and property as a result of PowerSchool's conduct in violation of the UCL, as stated herein and above.

59

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

269.    By deceptively storing, collecting, and disclosing their Private Information, PowerSchool has taken money or property from Plaintiffs and California Subclass members.

270.    PowerSchool acted intentionally, knowingly, and maliciously to violate the UCL, and recklessly disregarded Plaintiffs' and California Subclass members' rights.

271.    Plaintiffs and California Subclass members seek all monetary and nonmonetary relief allowed by law, including restitution of all profits stemming from PowerSchool's unfair, unlawful, and fraudulent business practices or use of their personal information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief, including public injunctive relief.

## COUNT XI

### Declaratory Judgment and Injunctive Relief
### *On Behalf of Plaintiffs and the Nationwide Class*

272.    Plaintiffs restate and reallege all preceding allegations above as if fully set forth herein.

273.    Plaintiffs bring this claim individually and on behalf of the Class.

274.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

275.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiffs' and Class members' Private Information and whether PowerSchool is currently maintaining data security measures adequate to protect Plaintiffs and Class members from

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

further data breaches that compromise their Private Information. Plaintiffs allege that PowerSchool's data security measures remain inadequate. Furthermore, Plaintiffs continue to suffer injury as a result of the compromise of their Private Information and remain at imminent risk that further compromises of their Private Information will occur in the future.

276. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. PowerSchool owes a legal duty to secure users' Private Information and to timely notify both customers and end users of a data breach under the common law, Section 5 of the FTCA, and various state statutes; and

b. PowerSchool continues to breach this legal duty by failing to employ reasonable measures to secure students', parents', and employees' Private Information.

277. This Court also should issue corresponding prospective injunctive relief requiring PowerSchool to employ adequate security protocols consistent with law and industry standards to protect customers' and end users' Private Information.

278. If an injunction is not issued, Plaintiffs will suffer irreparable injury, and lack an adequate legal remedy in the event of another data breach of PowerSchool's network.

279. The risk of another such breach is real, immediate and substantial.

280. If another breach of PowerSchool's databases of student, parent, and employee data occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

281.    The hardship to Plaintiffs if an injunction is not issued exceeds the hardship to PowerSchool if an injunction is issued. Plaintiffs will likely be subjected to substantial identity theft and other damages. On the other hand, the cost to PowerSchool of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and PowerSchool has a pre-existing legal obligation to employ such measures.

282.    Issuance of the requested injunction will not disserve the public interest. Instead, such an injunction would benefit the public by preventing another data breach of PowerSchool's network, thus eliminating the additional injuries that would result to Plaintiffs and Class members whose Private Information would be further compromised.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs, individually and on behalf of members of the Class and Subclass, respectfully requests that the Court enter judgment in their favor and for the following specific relief against PowerSchool as follows:

1.    That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed Class and California Subclass under Fed. R. Civ. P. 23(b)(1), (b)(2), and/or (b)(3), including the appointment of Plaintiffs' counsel as Class Counsel;

2.    For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

3.    That the Court enjoin PowerSchool, ordering them to cease from unlawful activities;

4.    For equitable relief enjoining PowerSchool from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

Class members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiffs and Class members;

5.    For injunctive relief requested by Plaintiffs, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class members, including but not limited to an Order:

    a.    Prohibiting PowerSchool from engaging in the wrongful and unlawful acts described herein;

    b.    Requiring PowerSchool to protect, including through encryption and multi-factor authentication, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state, and/or local laws;

    c.    Requiring PowerSchool to delete and purge the Private Information of Plaintiffs and Class members unless PowerSchool can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class members;

    d.    Requiring PowerSchool to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiffs' and Class members' Private Information;

    e.    Requiring PowerSchool to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on PowerSchool's systems periodically;

    f.    Prohibiting PowerSchool from maintaining Plaintiffs' and Class members' Private Information on a cloud-based database;

63

CLASS ACTION COMPLAINT

g. Requiring PowerSchool to segment data by creating firewalls and access controls so that, if one area of PowerSchool's network is compromised, hackers cannot gain access to other portions of its systems;

h. Requiring PowerSchool to conduct regular database scanning and securing checks;

i. Requiring PowerSchool to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII and PHI, as well as protecting the Private Information of Plaintiffs and Class members;

j. Requiring PowerSchool to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with PowerSchool's policies, programs, and systems for protecting personal identifying information;

k. Requiring PowerSchool to implement, maintain, review, and revise as necessary a threat management program to monitor its networks for internal and external threats appropriately, and assess whether monitoring tools are properly configured, tested, and updated; and

l. Requiring PowerSchool to meaningfully educate all Class members about the threats they face due to the loss of their confidential personal identifying

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

information to third parties, as well as the steps affected individuals must take to protect themselves.

6.      For prejudgment interest on all amounts awarded, at the prevailing legal rate;

7.      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law; and

8.      For all other Orders, findings, and determinations sought in this Complaint.

## JURY DEMAND

283.      Plaintiffs, by and through their parents and guardians, individually and on behalf of the Class, hereby demand a trial by jury for all claims so triable.

Dated: April 18, 2025                    Respectfully Submitted,


*/s/ Christopher A. Seeger*


Christopher A. Seeger*
SEEGER WEISS LLP
55 Challenger Road, Suite 600
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Facsimile: (973) 639-9393
Email: cseeger@seegerweiss.com

Shauna Itri (SBN 345536)
Alana Bevan*
SEEGER WEISS LLP
325 Chestnut St., Suite 917
Philadelphia, PA 19106
Telephone: (215) 564-2300
Facsimile: (215) 851-8029
Email: sitri@seegerweiss.com
          abevan@seegerweiss.com


*Counsel for Plaintiffs and the Proposed Class*

*\*pro hac vice forthcoming*


65

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100